UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA K. DOLL, | ) | CASE NO. 1:18-CV-1591 |
| Plaintiff, | ) ) ) | JUDGE JAMES S. GWIN |
| v. | ) ) | Magistrate Judge George J. Limbert |
| ANDREW M. SAUL[1], | ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

Cynthia Doll ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her merits brief, filed on October 31, 2018, Plaintiff asserts that the administrative law judge ("ALJ") erred in his assessment of Plaintiff's residual functional capacity ("RFC") and affective disorder because (1) he failed to consider the combination of severe and non-severe impairments in his RFC finding, and (2) he failed to consider the effects of Plaintiff's affective disorder on her ability to perform more than basic work-related activities. *See* ECF Dkt. #12. Defendant filed a response brief on January 31, 2019. ECF Dkt. #15. Plaintiff filed a reply brief on February 14, 2019. ECF Dkt. #16.

For the following reasons, the undersigned recommends that this Court REVERSE the ALJ's decision and REMAND the instant case.

**I**.    **PROCEDURAL AND FACTUAL HISTORY**

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

1

Previously, Plaintiff protectively filed an application for a period of disability and DIB on July 23, 2012, alleging disability beginning May 15, 2012. ECF Dkt. #11 ("Tr.") at 72.[2] The application was denied initially and upon reconsideration, and the prior ALJ ultimately denied benefits on June 20, 2014. *Id.* at 69, 72, 81. The ALJ in the instant case noted in his decision that the prior ALJ decision stood as the final decision of the Commissioner of Social Security on the application filed July 23, 2012 through June 20, 2014. *Id.* at 16.

Plaintiff protectively filed new applications for DIB and SSI on May 27, 2015, alleging disability beginning on May 31, 2011. Tr. at 16, 248-60. Plaintiff's applications were denied at the initial administrative level and upon reconsideration. *Id.* at 16, 86-99, 129-62. On September 15, 2017, Plaintiff amended her disability onset date to September 18, 2014. *Id.* at 268. Also, Plaintiff requested an administrative hearing, which was held on October 19, 2017. *Id*. at 16, 32, 193-200, 215, 239. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing, with Plaintiff appearing via video conference and the VE appearing via telephone. *Id.* at 32-34. On November 22, 2017, the ALJ issued a decision partially favoring Plaintiff. *Id*. at 12-25. Specifically, the ALJ found the following: (1) based on her application for a period of disability and DIB benefits, Plaintiff was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through September 30, 2015, the date last insured; and (2) based on her application for SSI, Plaintiff had been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on September 16, 2016. *Id.* at 25. Plaintiff filed a request for review, which the Appeals Council denied on May 14, 2018. *Id*. at 1-6.

On July 12, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On October 31, 2018, Plaintiff filed a brief on the merits. ECF Dkt.#12. On January 31, 2019, Defendant filed a brief on the merits. ECF Dkt. #15. Plaintiff filed a reply brief on February 14, 2015. ECF Dkt. #16.

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

## II.    MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

The only issue raised on this appeal concerns Plaintiff's mental condition, specifically her medically determinable affective disorder. Therefore, the undersigned will limit the review of medical evidence only to Plaintiff's mental impairment.

On October 6, 2015, clinical neuropsychologist Dr. Joshua Magleby, Ph.D., evaluated Plaintiff. Tr. at 911-16. Plaintiff claimed a psychiatric history in which she was formally diagnosed with "anxiety" made initially about four years ago, with symptoms beginning "at that time." *Id.* at 912. She stated that she received treatment by medication that she was still currently on, and she claimed that the medication was helpful. *Id.* At the time of Dr. Magleby's examination, Plaintiff claimed to be taking Adderall, Klonopin, Vico/Profen, Albuterol and another inhaler, and Prilosec. *Id.* Plaintiff claimed having problems with memory and concentration, which she had all her life but which became worse about four years prior when she stopped working. *Id.* She stated she was most recently employed around 2009 as a restaurant manager, which had lasted about five years until she was "let go" because she "couldn't walk, it was a big building, and [she] couldn't load coolers." *Id.*

With regard to daily living activities, Plaintiff reported that she was capable of self-care activities, such as dressing and taking care of personal hygiene. Tr. at 913. Dr. Magleby noted that "[l]imitations or restrictions due primarily to psychiatric conditions are mild." *Id.* Dr. Magleby noted that Plaintiff was functional and did not have significant problems in other areas, such as adaptive behaviors, ability to manage money, getting along well with others, using community resources, and had fair coping skills. *Id.*

Dr. Magleby observed that Plaintiff's affect was typically very normal and saw no evidence of affective instability. Tr. at 913. He also noted that Plaintiff described her mood as generally "frustrated," with some anxiety and depression but no marked mood swings. *Id.* Despite observing that her mood during the exam appeared fairly stable, he noted that her symptoms of depression were moderate to marked, including lack of interest, down mood, irritability, excessive anger, and poor concentration. *Id.* at 914. Dr. Magleby also observed that Plaintiff did not display any overt signs of anxiety on exam, her social phobic symptoms were minimal, she denied any unusual specific

3

phobias, she exhibited no clinical symptoms of panic disorder, and her generalized anxiety symptoms were mild to moderate. *Id.*

During her mental status examination, Dr. Magleby noted that Plaintiff's ability to attend to the mental status inquiry was fair, without unusual responses or distractions. Tr. at 914. He also found that her memory for past and recent life events and the presentation of personal history appeared fair. *Id.* He observed that Plaintiff's vigilance during the mental status exam was mostly fair, but she needed repetition of questions at times. *Id.* Dr. Magleby found the following functioning to be fair or average: executive functions such as simple attention and mental organization; completion of a simple two-step request; computation skills; literacy level; common sense; and mental processing speed. *Id.* He found that Plaintiff's general fund of information was poor, and he estimated that her intelligence was borderline. *Id.* He also noted that the evidence of diminished capacity was unremarkable, her effort on the mental status examination was within normal limits, and feigned cognitive deficits were unremarkable. *Id.*

In addition, Dr. Magleby found that Plaintiff's judgment, problem-solving skills, insight, consequential thinking, behavioral control, and ability to understand the effects of her behavior on others all appeared to be fair or mostly fair. *Id.* at 914-15. Ultimately, Dr. Magleby diagnosed Plaintiff with (1) Adjustment Disorder with Mixed Anxiety and Depressed Mood, Chronic Paranoid and Avoidant Traits, and (2) Borderline Intellectual Functioning. *Id.* at 915. Also, he reported that her conditions appeared to be chronic. *Id.*

On November 12, 2015, state agency reviewing psychologist Paul Tangeman, Ph.D., at the initial level determined that Plaintiff had affective disorder, which he classified as a "severe" impairment. Tr. at 107-08. Specifically, he found that within the "B" criteria of the Listings, Plaintiff exhibited: (1) mild restrictions of activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace, and (4) no repeated episodes of decompensation, each of extended duration. *Id.* at 107. Dr. Bonnie Katz, Ph.D., determined the same on March 12, 2016 at the reconsideration level. *Id.* at 138-39.

**B.** **Testimonial Evidence**

At the hearing before an ALJ on October 19, 2017, Plaintiff appeared with counsel. Tr. at 32-33. Plaintiff's counsel clarified that the date last insured is September 30, 2015, which is important because she does not qualify financially for SSI since that date because she started receiving a pension from her ex-husband. *Id.* at 37, 39-40. Therefore, Plaintiff requested a finding of a disability onset date before the date last insured. *Id.*

Plaintiff testified that she was born on September 4, 1959 and completed high school. Tr. at 41, 43. Upon examination of the ALJ, Plaintiff testified that despite having a driver's license, she stopped driving about one year prior. *Id.* at 42-44. She stated, "I guess it's just the anxiety. I just don't like to drive." *Id.* at 43. The ALJ asked what prevented her from working a couple of years ago, to which Plaintiff responded: "Just my back and my feet, and mentally I wasn't up to it." *Id.* at 44. The ALJ asked what she meant by being "mentally not up to it" and to give some examples. *Id.* She responded that she had not been sleeping well, she had anxiety and depression, and did not feel like doing anything. *Id.* At the time, which was about two years prior, she was not seeing any kind of counselor, like a therapist or psychologist, and clarified that it was because she could not afford it. *Id.* at 44-45. She also clarified that, at the time of the hearing, she had been seeing several different doctors for her depression and anxiety for about five months. *Id.* at 44-45. One of the former doctors prescribed her Lorazepam for anxiety and depression, but the records from his office were not available because of a DEA raid. *Id.* at 45-46. She stated that one of her other doctors prescribed her a different medication, Amitriptyline, for the depression and anxiety and that it seemed to be helping with her symptoms. *Id.* at 47-48. A different doctor prescribed her Zoloft for her depression symptoms and raised the dosage of her Amitriptyline. *Id.* at 48.

Plaintiff stated that she lived in a duplex by herself in 2015, and she cooked and cleaned for herself. *Id.* at 54-55. She also stated that her children helped her with shopping and doing laundry. *Id.* at 53-56.

### III.  RELEVANT PORTIONS OF THE ALJS' DECISIONS

In his June 20, 2014 decision, the prior ALJ found that Plaintiff had the following severe impairments: scoliosis, carpal tunnel syndrome, and chronic obstructive pulmonary disease

5

("COPD"). Tr. at 74. The prior ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 75. He also found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except the Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk about 6 hours in an 8 hour workday with normal breaks; could sit for about 6 hours in an 8 hours workday with normal breaks; could occasionally stoop; should avoid more than occasional exposure to irritants such as fumes, dust, gases, and smoke; and would be limited to frequent grasping, handling, and fingering with the dominant hand. *Id.* at 76. With this RFC and based upon the VE's testimony, the prior ALJ found that Plaintiff was capable of performing past relevant work as a restaurant manager, which was light, skilled employment. *Id.* at 80. Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. *Id*. at 81.

In the most recent ALJ decision dated November 22, 2017, the ALJ determined that Plaintiff met the insured status requirements of the SSA through September 30, 2015 and has not engaged in substantial gainful activity since the alleged onset date. Tr. at 19. The ALJ also found that Plaintiff has the following severe impairments: scoliosis, liver cirrhosis, and COPD. Also, after finding mild limitations in each of the four broad areas of mental functioning set out in the disability regulations, he found that Claimant's medically determinable affective disorder was only a "non-severe" impairment because it had no effect on her ability to perform work-related activity on a regular and continuing basis. *Id.* at 19-20 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).

The current ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings since the amended alleged onset date of disability, September 18, 2014. Tr. at 20-21. He went on to find that prior to September 16, 2016, the date Plaintiff became disabled, the Plaintiff had the RFC to perform light work with the following limitations: limited to frequent fingering, feeling, and handling with the right hand; occasionally stoop; and frequent exposure to dusts, odors, fumes, and pulmonary irritants. *Id.* at 21-23. With this RFC and based upon new and material evidence since the prior ALJ's decision, the ALJ found that he was not bound by the prior ALJ's findings regarding

6

Plaintiff's RFC and did not need to adopt such findings regarding the period beginning September 16, 2016. *Id.* at 22-23. Therefore, the ALJ found that beginning on September 16, 2016, Plaintiff has the RFC to perform sedentary work with the following limitations: can handle items frequently with the right hand; frequently finger with the right hand; frequently feel on the right; occasionally stoop; frequent exposure to dusts, odors, fumes, and pulmonary irritants. *Id.* at 23. The ALJ found that prior to September 16, 2016, Plaintiff was capable of performing past relevant work as a restaurant manager because such work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 23-24. Further, he found that beginning on September 16, 2016, Plaintiff's RFC has prevented her from being able to perform past relevant work, and, considering her age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that she could perform. *Id.* at 24-25. Ultimately, the ALJ found that Plaintiff was not disabled prior to September 16, 2016, but she became disabled on that date and has continued to be disabled through the date of his decision. *Id.* at 25. Additionally, he found Plaintiff was not under a disability within the meaning of the SSA at any time through September 30, 2015, the date last insured. *Id.* at 25.

**IV.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VI.     LAW AND ANALYSIS

### A.     *ALJ's RFC Analysis Omitted a Discussion of Plaintiff's Non-Severe Impairment*

Plaintiff first complains that the ALJ erred by failing to consider the combination of severe and non-severe impairments in his RFC finding. ECF Dkt. #12 at 9-12. Plaintiff does not contest the ALJ's finding that her affective disorder is classified as a "non-severe" impairment, but rather she contends the ALJ erred because he failed to consider her affective disorder at all when making the RFC finding for the period prior to September 16, 2016. *Id.* For the reasons below, the undersigned agrees with Plaintiff and recommends that the Court reverse and remand the instant case.

At step two of the sequential steps for evaluating entitlement to social security benefits, an ALJ considers whether the claimant has a medically determinable physical or mental impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(a)(4)(ii) & (c); 20 C.F.R. § 416.920(a)(4)(ii) & (c); *see also* Tr. at 17. Social Security regulations establish that after this determination at step two, the ALJ must consider *all* of the claimant's impairments, both "severe" and "non-severe," at every sequential step in the process, including in the ALJ's determination of RFC. *See* 20 C.F.R. § 404.1520(e), 404.1545, 416.920(e), 416.945, 404.1523(c), 404.1529; S.S.R. 96-8P, 1996 WL 374184, at *5 (1996). RFC simply defined is "what an individual can still do despite his or her limitations." S.S.R. 96-8P, 1996 WL 374184, at *2 (1996); *see also* 20 C.F.R. § 404.1545(a)(1). S.S.R. 96-8P also provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may when considered with limitations or restrictions due to other impairments be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Id.* at *5. Case law in this district has also interpreted the regulations as unambiguously requiring an ALJ to consider all of a claimant's impairments, regardless of whether they are "severe" or "non-severe." *See, e.g.*, *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003); *Clagg v. Comm'r of Soc. Sec.*, No. 1:17CV194, 2018 WL 382805, at *3-4 (N.D. Ohio 2018); *Seese v. Colvin*, No. 1:16CV739, 2017 WL 663550, at *12 (N.D. Ohio 2017), adopted in *Seese v. Berryhill*, 2017 WL

661679 (N.D. Ohio 2017); *Patterson v. Colvin*, No. 5:14CV1470, 2015 WL 5560121, at *3-4 (N.D. Ohio 2015). In addition, the ALJ in the instant case included these correct legal standards, specifically stating the following:

> Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, *I must consider all of the claimant's impairments, including impairments that are not severe* (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8P).

Tr. at 18 (emphasis added).

At step two of the analysis, the ALJ found that Plaintiff's "severe" impairments included scoliosis, liver cirrhosis, and COPD. Tr. at 19. He found that these were medically determinable impairments that significantly limited Plaintiff's ability to perform basic work activities. *Id.* He then determined that Plaintiff's medically determinable affective disorder did not cause more than minimal limitation in her ability to perform basic mental work activities and, therefore, concluded they were "non-severe." *Id.* at 19-20. The ALJ discussed this finding in depth explaining his consideration of the four broad areas of mental functioning, known as the "paragraph B" criteria. *Id.* at 19. In each of the four areas, the ALJ found mild limitations. *Id.* at 19-20. The ALJ also considered Dr. Magleby's examination from October 6, 2015, affording it "little weight." Tr. at 20. Plaintiff does not contest any of the ALJ's findings or analysis at this step. Rather, the Plaintiff takes issue with the ALJ's RFC analysis, arguing that the ALJ "abandoned the analysis of [her] affective disorder and did not evaluate the combined effect of her severe and non-severe impairments upon her mental residual functional capacity at Step 4." ECF Dkt. #12 at 12.

In determining Plaintiff's RFC prior to the date Plaintiff became disabled, September 16, 2016, the ALJ determined that she had the RFC to perform light work with certain specified limitations. Tr. at 21. The ALJ stated that he "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence," as well as "opinion evidence." *Id.* Despite the fact that there was a prior adjudication on June 20, 2014, the ALJ in the instant case considered new and material evidence to make his own finding at step two regarding Plaintiff's affective disorder. *Id.* at 19-22. The new and material

evidence included Dr. Magleby's examination from 2015 and State agency consultants' opinions from 2015 and 2016. *See id.* at 20; *see also* Tr. at 107-08, 138-39, 911-16. Even though the ALJ stated in step two that Plaintiff's affective disorder "has no effect on her ability to perform work-related activity on a regular and continuing basis," the ALJ was still required to discuss the combination of all of her "severe" and "non-severe" impairments in his RFC analysis. *Id.* at 20. However, he failed to mention her affective disorder anywhere in his RFC analysis. *See id.* at 21-23.

Accordingly, the ALJ's failure to properly consider and analyze Plaintiff's non-severe impairment of affective disorder in his determination of RFC leads the undersigned to recommend that the Court reverse and remand the instant case. Other courts in this district have held as such. *See Clagg v. Comm'r of Soc. Sec.*, No. 1:17CV194, 2018 WL 382805, at *3-4 (N.D. Ohio 2018) (finding the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider the combined effects of plaintiff's impairments when she did not include plaintiff's non-severe mental impairments in her RFC assessment); *Seese v. Colvin*, No. 1:16CV739, 2017 WL 663550, at *13-14 (N.D. Ohio 2017), adopted in *Seese v. Berryhill*, 2017 WL 661679 (N.D. Ohio 2017) (vacating and remanding ALJ's decision because ALJ failed to mention plaintiff's non-severe depression in his RFC analysis and did not explain why her depression did not result in any work-related limitations); *Patterson v. Colvin*, No. 5:14CV1470, 2015 WL 5560121, at *3-4 (N.D. Ohio 2015) (remanding because ALJ did not properly considered all impairments when his RFC analysis had no discussion of whether plaintiff's non-severe impairment contributed to an inability to perform substantial gainful work).

### B. *Effect of Plaintiff's Non-Severe Impairment on RFC*

Plaintiff's second contention is that the ALJ failed to consider the effects of her affective disorder on her ability to perform more than basic work-related activities. This contention is fundamentally related to Plaintiff's first assignment of error. Since the undersigned has recommended that the Court remand the instant case based upon the ALJ's failure to sufficiently consider Plaintiff's affective disorder in his determination of her RFC, and that consideration and

evaluation may impact the rest of the steps in the sequential evaluation process, the undersigned recommends that the Court decline to address this assertion.

### VII.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE and REMAND the instant case in order for the ALJ to reconsider the combined effects of all of Plaintiff's severe and non-severe impairments in determining her RFC.


DATE: June 28, 2019

　　　　　　　　　　　　　　　　　　　　*/s/George J. Limbert*
　　　　　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).